**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BARBARA GONZALES-ALEMANY,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-04-CA-0773 FB (NN)** |
| **R. JAMES NICHOLSON, Secretary** | § | |
| **of the Department of Veterans Affairs,** | § | |
| | § | |
| **Defendant.** | § | |

**REVISED
MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

### I.  Introduction

The matters before the Court are the motion for summary judgment brought by defendant R. James Nicholson, Secretary of the Department of Veterans Affairs' (Docket Entry 31), plaintiff Barbara Gonzales-Alemany's response in opposition to the summary judgment motion (Docket Entry 34), and defendant's reply (Docket Entry 38).  After considering the motion, response, reply, and the entirety of the record in this matter, it is my recommendation that defendant's motion for summary judgment be **GRANTED**.

I have authority to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.[1]

### II. Jurisdiction

_____

[1] Docket Entry 40.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the statute conferring federal question jurisdiction, and 42 U.S.C. § 2000e-5(f)(3) of Title VII of the Civil Rights Act of 1964 ("Title VII").

### III. Procedural History

Plaintiff commenced the instant action alleging employment discrimination in violation of Title VII by filing a complaint and jury demand on August 27, 2004.[2]  On January 10, 2005, the District Court issued an Order to Show Cause ("OSC") why the case should not be dismissed for plaintiff's failure to serve the summons and complaint on defendant.[3]  Plaintiff responded to the OSC,[4] and the parties filed an agreed motion to extend the time for defendant to answer,[5] which the District Court granted by Order entered on February 2, 2005.[6]

On July 15, 2005, plaintiff filed an amended complaint seeking to add Larry P. Meschkat ("Meschkat") and Philip "Felipe" Gonzalez ("Gonzalez"), in their individual capacities, as defendants in the action.[7]  Defendant filed a motion requesting the amended complaint be struck or, in the alternative, be dismissed, and plaintiff responded to the motion to strike and filed a motion to strike defendant's motion.[8]

---

[2] Docket Entries 1 and 2.

[3] Docket Entry 3.

[4] Docket Entry 4.

[5] Docket Entry 5.

[6] Docket Entry 6.

[7] Docket Entry 21.

[8] Docket Entries 23, 24, 25.

On March 8, 2004, I issued a Memorandum and Recommendation recommending that defendant's motion to strike be granted and plaintiff's motion to strike be denied.[9]  The District Court accepted the recommendation over plaintiff's objections and ordered plaintiff's amended complaint be stricken.[10]

Therefore, the operative complaint in this case is plaintiff's original complaint, which contains five "Counts" alleging discrimination.  In her complaint, plaintiff alleged that defendant's employees harassed plaintiff, subjected plaintiff to a hostile work environment, and retaliated against plaintiff for filing complaints with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff alleged that defendant discriminated against her because of her national origin (Mexican-American), gender, and age, and for exercising her EEO rights.[11]

Defendant filed the instant summary judgment motion on December 1, 2005,[12] and plaintiff responded to the summary judgment motion on December 27, 2005.[13]  Defendant filed a reply on February 10, 2006.[14]

## IV. Issues Presented

1. Did plaintiff fully exhaust her administrative remedies prior to commencing this law suit in Federal Court?

2. Has plaintiff demonstrated genuine issues of material fact for trial that defendant subjected plaintiff to a hostile work environment?

---

[9] Docket Entry 41.

[10] Docket Entry 43.

[11] Docket Entry 1 at 5, ¶¶ 21-25.

[12] Docket Entry 31.

[13] Docket Entry 34.

[14] Docket Entry 38.

3. Has plaintiff demonstrated genuine issues of material fact for trial that defendant retaliated against plaintiff for prior EEO activity?

## V. <u>Undisputed Facts</u>

**A. Plaintiff's Employment and Disciplinary Actions.**

Plaintiff is a Mexican-American female born in 1961.  She graduated from high school in 1979 and graduated from St. Philip's College in San Antonio in 1987 with a degree in dietetic technology.  Plaintiff entered into employment with the Department of Veterans Affairs ("VA") at the Audie L. Murphy Memorial Hospital in April 1987 as a part-time food service worker and shortly thereafter obtained a full-time position as a Dietary Technician.

While working as a Dietary Technician, plaintiff's supervisor disciplined plaintiff for personality conflicts with co-workers and patients.  Because of her conflicts with co-workers and patients, the VA almost terminated plaintiff's employment, but instead, offered her a lateral transfer.[15]  On April 4, 1994, plaintiff accepted the position as a Patient Service Assistant with the Medical Administration Service ("MAS").  In her position with MAS, plaintiff conducted "means tests" to determine whether patients qualified financially for benefits, worked in various clinics assisting patients, and performed administrative functions.  Plaintiff reported to various supervisors while working at MAS.  Her supervisors reported to Meschkat, who in turn reported to Jose Coronado ("Coronado"), the Director of the Hospital.

In early 2000, the VA received three complaints from veterans claiming that plaintiff had treated them rudely.  On April 11, 2000, Woody Zajicek ("Zajicek"), Supervisor, Patient

---

[15] In her deposition, plaintiff testified that she was almost terminated from the position.  It was her understanding that the director of the hospital did not want to terminate her employment, and management wanted to give her a another chance.  Docket Entry 31, Exh. 1 at 20-21.

Eligibility, issued plaintiff a Letter of Counseling in which he explained that the incidents were reviewed, and he did not find any "deliberate erroneous actions" on plaintiff's part.  However, he cautioned plaintiff about the importance of patients' perceptions and asked her to modify her demeanor.  Zajicek advised plaintiff that the letter did not constitute formal discipline, but similar incidents in the future could result in formal discipline.[16]

On June 8, 2000, Congressman Lamar Smith notified Coronado of a complaint that he had received from a constituent concerning plaintiff's behavior.  Coronado convened a Board of Investigation ("BOI") to investigate the allegations of verbal abuse.

On August 11, 2000, the BOI issued findings, conclusions, and recommendations.  In particular, the BOI found that plaintiff had "threatened and intimidated" a veteran and failed to use "proper customer service etiquette."  The BOI concluded that plaintiff presented a threat to her internal and external customers due to her failure/inability to consistently interact in a positive manner and to control her anger.  The BOI further concluded that the root causes of the errors were the inconsistent documentation of negative behaviors by plaintiff, failure of management to act promptly, effectively, and consistently concerning plaintiff's negative behavior, and the close working relationship between plaintiff and Service Chief Meschkat.  The BOI recommended that plaintiff be disciplined with a reprimand or suspension of less than fourteen days, and recommended that any further instances of verbal abuse, threats, or intimidation result in a suspension greater than fourteen days and/or removal.[17]

After receiving notice of the BOI's recommendation, plaintiff went to Meschkat and

---

[16] Docket Entry 31, Exh. 2, Counseling Letter.

[17] Docket Entry 31, Exh. 2, BOI Memo.

asked for his assistance to mitigate the recommended suspension.[18]  On September 7, 2000,

Meschkat issued a notification to plaintiff proposing that she be suspended for three days. [19]

After considering the evidence, including plaintiff's written response, Associate Director

Timothy Shea ("Shea") suspended plaintiff effective November 7 through November 9, 2000.[20]

On March 2, 2001, John Mendoza ("Mendoza"), a Deputy Director, proposed that

plaintiff be suspended for fourteen days for photographing a supervisor and patients without their

consent and refusing to surrender the film during the investigation of the matter.[21]  Plaintiff

denied taking photographs and denied having possession of any film at work.  She offered to

allow security personnel to search her belongings.[22]  Plaintiff submitted a written reply to the

proposed suspension reiterating her denial of taking photographs and claiming that the

allegations made against her were false.[23]  On May 3, 2000, Shea notified plaintiff of his decision

to suspend her for fourteen days, effective May 13 through May 26, 2001.[24]  Plaintiff again

approached Meschkat for assistance in mitigating the suspension; however, she "advised"

Meschkat that she would report sexual harassment through her pending  EEO case if he would

not assist her.[25]

---

[18] Docket Entry 31, Exh. 1 at 70-72.

[19] Docket Entry 31, Exh. 2, Proposed 3-Day Suspension.

[20] Docket Entry 31, Exh. 2, Decision on Proposed 3-Day Suspension.

[21] Docket Entry 31, Exh. 3, Proposed 14-day Suspension.

[22] Docket Entry 31, Exh. 1 at 80-82.

[23] Docket Entry 31, Exh. 3, Response to Proposed 14-Day Suspension.

[24] Docket Entry 31, Exh. 3, Decision on Proposed 14-Day Suspension.

[25] Docket Entry 31, Exh. 1 at 86, 234-238, Exh. 12, Letter to Paul A. Crain, EEO Officer.

Hospital management received additional complaints against plaintiff.  Gonzalez reported that plaintiff almost hit a patient with a stuffed, miniature football she had thrown at him.  He also complained that plaintiff moved a chair on which he had been sitting while working with a patient.  Gonzalez claimed that he was about to sit down when he noticed the chair had been moved and that he could have been seriously injured had he fallen because he had recently undergone surgery.[26]  Gonzalez also reported that plaintiff had threatened to file an EEO complaint against him if he did not drop his complaint against plaintiff.[27]  Another patient, Alvaro P. Alvarez, complained that plaintiff treated him rudely on September 7, 2001.[28]

On August 30, 2001, Carmen Castanuela ("Castanuela") reported that plaintiff requested permission to take the rest of the day off from work.  Castanuela contacted other supervisors about plaintiff's request.  They determined that they could not approve the leave because the hospital did not have sufficient staff that day.  According to Castanuela, plaintiff told her that she would take sick leave.[29]  Plaintiff left work, and her immediate supervisor placed her on absent without leave status.[30]

On September 19, 2001, plaintiff spoke with Oralia L. Trevino ("Trevino"), Management Assistant, asking to speak with Associate Director Shea.  Trevino refused to allow plaintiff to talk to Shea.  Plaintiff went to Shea's office and demanded to speak to him concerning a

---

[26] Docket Entry 31, Exh. 4, Gonzalez Statement.

[27] Docket Entry 31, Exh. 1, 115-118, Docket Entry 31, Exh. 4, Fact-finding Memo.

[28] Docket Entry 31, Exh. 4, Alvarez Letter.

[29] Docket Entry 31, Exh. 4, Castanuela Statement.

[30] Docket Entry 31, Exh. 1, 94-101, Docket Entry 31, Exh. 4, Pouncy Memo.

supervisor's statement that she could not have her attorney present at a fact-finding conference. Trevino denied plaintiff admission to Shea's office, and security officers were called when plaintiff's tone of voice became loud.[31]

On September 24, 2001, Mendoza notified plaintiff of her Proposed Removal.[32]  Shea held a meeting on December 3, 2001, attended by plaintiff and her attorney, to discuss the complaints against plaintiff.  At the meeting, plaintiff denied any wrongdoing.[33]  On December 11, 2001, Coronado issued a decision removing plaintiff from service effective December 19, 2001.  The decision stated that plaintiff was removed for unauthorized absence, discourtesy toward a veteran patient, endangering the safety of a co-worker, threatening a co-worker, leaving a duty station without permission, and disrespectful conduct.[34]

**B. Plaintiff's EEOC complaints.**

During her employment with the VA, plaintiff filed a number of claims with the EEOC. In the first claim made in June 2000, plaintiff alleged that her supervisor, Nancy Balabuch ("Balabuch"), discriminated against her by yelling and refusing to provide assistance with a psychiatric patient.  Plaintiff elected not to pursue this claim after she received an apology from Balabuch.[35]

On November 7, 2000, plaintiff filed a complaint with the EEOC claiming that Meschkat,

---

[31] Docket Entry 31, Exh. 1 at 108-113, Docket Entry 31, Exh. 4, Trevino Statement.

[32] Docket Entry 31, Exh. 4, Proposed Removal.

[33] Docket Entry 31, Exh. 1 at 121-123.

[34] Docket Entry 31, Exh. 4, Decision on Proposed Removal.

[35] Docket Entry 31, Exh. 1 at 146-149.

by issuing the proposed three-day suspension, discriminated against her based on her race and retaliated against her for filing the complaint against Balabuch.  Plaintiff asked that the suspension and false testimony be removed from her records.[36]

On December 5, 2000, plaintiff amended her EEO complaint to include a claim of racial harassment and retaliation.  Plaintiff alleged that a co-worker made harassing comments to her in the admitting area and in the area of the microwave oven.[37]  Specifically, plaintiff alleged that Castanuela approached the admitting area where plaintiff was standing and sarcastically asked Gonzalez, "Are there only guys working here?"  On a separate occasion, Castanuela walked past plaintiff and said, "We're so lucky."  Plaintiff felt that Castanuela's remarks were sarcastic and directed toward her.[38]

On April 10, 2001, plaintiff amended her EEO complaint to include a claim that the VA discriminated against her by proposing that she be suspended for fourteen days.  Plaintiff alleged that the proposed suspension was based on her race and in retaliation for her prior EEO activity.[39]

On May 22, 2001, plaintiff amended her EEO complaint to include a claim of sexual harassment.[40]  In her letter to the EEO, plaintiff claimed that Meschkat began sexually harassing her in 1994 when she started work with MAS.  She complained that he sent her letters saying he loved her, inappropriately hugged and kissed her on the lips, held her hands, stared into her eyes

---

[36] Docket Entry 31, Exh. 7, Complaint, Acceptance Letter.

[37] Docket Entry 31, Exh. 8, Amendment to Acceptance Letter.

[38] Docket Entry 31, Exh. 1 at 167-167, Exh. 8, Gonzales Notes.

[39] Docket Entry 31, Exh. 1 at 182-187, Exh. 9, Letter to Paul A. Crain, Amendment to Acceptance Letter.

[40] Docket Entry 31, Exh. 12, Amendment to Acceptance Letter.

and said he loved her, and chased her around a round table.  Plaintiff informed the EEO Officer
that she had asked Meschkat to intercede on her behalf to mitigate the second fourteen-day
suspension, clear her record, and help her get a job with the Social Security Administration.  She
also informed the EEO officer that she had advised Meschkat that if he refused to assist her, she
would report his sexual harassment in her EEO case.[41]

On October 27, 2001, plaintiff filed a complaint with the EEOC alleging that her co-
worker, Gonzalez, had sexually harassed her.  Plaintiff alleged that upon receiving roses from her
boyfriend on two occasions, Gonzalez looked at her in a perverted manner, made hissing sounds,
and stated "you must be good in bed."  She additionally alleged that Gonzales talked about
episodes of the Howard Stern Show, which plaintiff found inappropriate.  Plaintiff also took
offense at a vulgarity that Gonzalez used when he accused her of breaking his radio.[42]  Gonzalez
responded that plaintiff had told him to drop his complaint against her, or she would file an EEO
complaint against him;[43] however, plaintiff denied making the ultimatum.[44]

## C. Plaintiff's relationship with Meschkat.

There is no dispute that plaintiff and Meschkat were involved in a relationship lasting
approximately five years.  The parties dispute the extent of the relationship and whether plaintiff
was a willing, consensual participant in the relationship.

According to plaintiff, Meschkat began harassing her when she began her employment

---

[41] Docket Entry 31, Exh. 12, Letter to Paul A. Crain.

[42] Docket Entry 31, Exh. 14, EEOC Complaint, Acceptance Letter.

[43] Docket Entry 31, Exh. 14, Gonzales Notes.

[44] Docket Entry 31, Exh. 1 at 115.

with the VA in 1994.  He sent her numerous cards and letters over the years professing his love

for her.  Meschkat would also express his affection at the work place where he hugged and kissed

plaintiff, held her hand, stared into her eyes, and chased her around a table.[45]  Meschkat's

inappropriate behavior was noted in the BOI investigation that resulted in plaintiff's three-day

suspension.

Plaintiff knew of the VA's sexual harassment policy.[46]  She also knew of other avenues

for reporting sexual harassment through her experience as the Chief Steward of her union from

1997 through 1998 or 1999.[47]  Plaintiff admitted that she received EEO training in conjunction

with becoming a Chief Steward, and represented employees in their cases, including one sexual

harassment case.[48]  Plaintiff did not raise the issue of Meschkat's alleged sexual harassment until

she amended her EEO complaint in May 2001.

Defendant does not dispute plaintiff's contention in her affidavit that Meschkat made

intimidating remarks to her.  However, defendant disputes plaintiff's contention that she felt very

threatened and feared losing her job as well as her life.  Defendant notes that plaintiff went to

Meschkat for assistance in mitigating her suspensions.  Additionally, she amended her EEO

complaint to add claims of discrimination and retaliation against Meschkat after he proposed that

she be suspended for three days.  Likewise, defendant disputes plaintiff's allegations that

Meschkat forced her to have sexual relations with him from 1994 through 1999.  Defendant notes

---

[45] Docket Entry 34, Tab 1, Affidavit.

[46] Docket Entry 31, Exh. 1 at 67, 228-232.

[47] Docket Entry 31, Exh. 1 at 78.

[48] Docket Entry 31, Exh. 1 at 134-136.

that during the EEO investigation and the VA investigation, plaintiff testified under oath that she did not have sex with Meschkat and that he never made any sexual advances or requests for sexual favors from her.  Furthermore, none of her EEO claims include an allegation of sexual assault against Meschkat.

**D. Plaintiff's administrative proceedings.**

On January 17, 2002, plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB").  In her appeal, plaintiff stated that the VA discriminated against her "because she is a Mexican-American woman, over 40 years old, who has filed prior EEOC complaints against management personnel for sexual harassment and gender discrimination."[49]  In denying the VA's motion to consolidate the EEOC and the MSPB proceedings, the MSPB issued a ruling determining that the MSPB only had jurisdiction over the VA's removal action of plaintiff, and accordingly, plaintiff's "allegations of retaliation, as well as racial, gender, and age discrimination, as they relate to her removal, are the only allegations of discrimination that can be litigated before the Board."[50]  On March 26, 2002, plaintiff withdrew her appeal, and the MSPB dismissed the appeal.[51]  On May 16, 2002, the EEOC issued an Order limiting the scope of the EEOC hearing.  The Order provided that the EEOC did not have jurisdiction to consider the portion of the plaintiff's complaint that concerned allegations of discrimination or retaliation that culminated in plaintiff's removal from Federal Service.  The EEOC identified the following issues to be decided:

---

[49] Docket Entry 31, Exh. 5, Appeal Form.

[50] Docket Entry 31, Exh. 5, MSPB Ruling.

[51] Docket Entry 31, Exh. 5, MSPB Initial Decision.

Issue No. 1.  Was the Complainant harassed or subjected to a hostile work environment on the basis of her gender (female), or in retaliation for protected EEO activity when,

a.  Complainant's co-workers made derogatory or offensive comments about her in or around the admitting and microwave oven areas of the hospital; or

b. Complainant's supervisor, without her permission or consent, hugged and kissed Complainant in her work areas and continually told her he loved her?

Issue No. 2.  If Complainant was discriminated or retaliated against, what is the appropriate remedy? [52]

The EEOC ultimately determined that the VA had not discriminated against plaintiff.

Plaintiff appealed the decision, and the Office of Federal Operations upheld the EEOC's decision.  Plaintiff requested reconsideration of the decision, and EEOC denied the request on May 20, 2004.  The denial notification explained plaintiff's right to file a civil suit within ninety calendar days from the date that she received the decision denying reconsideration.[53]

## VI. Analysis

### A. Summary judgment standard.

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56 provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[52] Docket Entry 31, Exh. 5, EEOC Order.

[53] Docket Entry 1 at 3, ¶¶ 8-13, Exh. 1.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[54]

Rule 56 requires that there be no genuine issue of material fact.  A fact is material if it might affect the outcome of the lawsuit under the governing law.[55]  A dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[56]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[57]

The movant on a summary judgment motion bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[58]  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[59]  Regardless of whether the movant accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the

---

[54] Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

[55] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Thomas v. LTV Corp.**, 39 F.3d 611, 616 (5th Cir. 1994).

[56] **Anderson**, 477 U.S. at 248; **Wise v. E.I. DuPont De Nemours & Co.**, 58 F.3d 193, 195 (5th Cir. 1995).

[57] **Anderson**, 477 U.S. at 249.

[58] **Celotex Corp.**, 477 U.S. at 323.

[59] **Edwards v. Aguillard**, 482 U.S. 578, 595 n.16 (1987) (citing **Celotex Corp.**, 477 U.S. at 323).

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[60]  Once the movant has carried that burden, the burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[61]

Importantly, the nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings.[62]  Rather, the nonmovant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[63]  When determining whether a genuine issue of material fact exists, the court "will not weigh the evidence or evaluate the credibility of witnesses."[64]  The court will look at the record in the light most favorable to the nonmovant drawing all inferences most favorable to that party.[65]  Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."[66]  Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his or her case

---

[60] **Celotex Corp.,** 477 U.S. at 323.

[61] **Anderson**, 477 U.S. at 257.

[62] Fed. R. Civ. P. 56(e); **Anderson**, 477 U.S. at 250; **State of Texas v. Thompson**, 70 F.3d 390, 393 (5th Cir. 1995).

[63] **Celotex Corp.,** 477 U.S. at 324; **Fields v. City of South Houston, Texas**, 922 F.2d 1183, 1187 (5th Cir. 1991); **Neff v. American Dairy Queen Corp.**, 58 F.3d 1063, 1065 (5th Cir. 1995).

[64] **Caboni v. General Motors Corp.**, 278 F.3d 448, 451 (5th Cir. 2002).

[65] **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).  **See also Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a nonmovant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

[66] **See Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir. 1994)).

on which he or she bears the burden of proof at trial.[67]  Accordingly, summary judgment motions permit the court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[68]

**B. Unlawful employment practices under Title VII.**

Title VII makes it unlawful for an employer to

> fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...[69]

It is also an unlawful employment practice under Title VII

> for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[70]

Actions for employment discrimination are subject to a burden shifting analytical framework.  First, the employee alleging the discrimination bears the burden of proving a *prima facie* case of discrimination based on an adverse employment action.  If he or she does so, the burden then shifts to the employer to establish a legitimate reason for the adverse action.  When the employer proves a lawful, nondiscriminatory reason for the adverse action, the burden then

---

[67] **Celotex Corp.**, 477 U.S. at 322 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). **Id.** at 323.

[68] **See Fields**, 922 F.2d at 1187.

[69] 42 U.S.C. § 2000e-2(a)(1).

[70] 42 U.S.C. § 2000e-3(a).

shifts back to the plaintiff-employee to show that the alleged nondiscriminatory reason was mere pretext for discriminatory conduct[71] or that the defendant's nondiscriminatory reason was only one of the reasons for its conduct while plaintiff's status as a member of a protected class is another motivating factor in the conduct (mixed motive alternatives).[72]

**C. Did plaintiff fail to fully exhaust her administrative remedies?**

Defendant contends that summary judgment is proper on plaintiff's claim that the VA terminated her employment in violation of Title VII because plaintiff failed to exhaust her administrative remedies with the MSPB.  Defendant argues that plaintiff elected to appeal her dismissal from federal employment to the MSPB, and included in her appeal allegations of discrimination.  The MSPB exercised its jurisdiction over plaintiff's appeal and her claims of discrimination and retaliation related to her termination of employment by the VA.  Defendant argues that plaintiff was required to continue to pursue these claims before the MSPB.  Instead, plaintiff withdrew her appeal to the MSPB, and effectively abandoned her claim that the VA terminated her employment for discriminatory reasons.  Consequently, the Court lacks jurisdiction over plaintiff's claims of discriminatory discharge.  Defendant further argues that plaintiff failed to raise the issue of age discrimination in her complaints to the EEOC and failed to give the EEOC written notice of her intent to file a civil action concerning age discrimination. Therefore, defendant is entitled to summary judgment on plaintiff's claim of age discrimination.

**1. Federal employee mixed case complaints.**

---

[71] **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973); **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133 (2000).

[72] **See also Torrez v. Milk Products, L.P.**,  402 F.Supp.2d 773, 776-77 (W.D. Tex. 2005) (explaining the **McDonnel Douglas** framework and adding the mixed motive element).

Congress created the MSPB as an independent agency to ensure that all federal government agencies follow federal merit systems practices.  The MSPB accomplishes this purpose by "adjudicating [f]ederal employee appeals of agency personnel actions, and by conducting special reviews and studies of [f]ederal merit systems."[73]  The statutes and regulations provide a mechanism for federal employees to assert claims of adverse employment actions along with claims of discriminatory conduct.[74]

> Summarized briefly, the process allows a federal employee who asserts claims of unlawful employment discrimination in conjunction with a challenge to an adverse employment action to either file an EEO complaint with the employing agency or appeal directly to the MSPB.[75]

Complaints containing allegations of discrimination related to an adverse employment action are identified as "mixed case complaints."[76]  When a federal employee brings a mixed case complaint, he or she may initially file the complaint with the employing agency (EEOC complaint) or file an appeal of the same matter with the MSPB, but not both.  If the employee files both an agency complaint and an appeal to the MSPB, the action first taken is considered an election to proceed in that forum.[77]

Regardless of which path the federal employee chooses to take, he or she must fully

---

[73] 5 C.F.R. § 1200.1; **see also** 5 U.S.C. § 1204 (delineating the powers and functions of the MSPB).

[74] 5 U.S.C. §§ 1201-1221, 2302, 7702.

[75] **Coffman v. Glickman**, 328 F.3d 619, 622 (10th Cir. 2003) (citing 5 U.S.C. § 7702(a); 29 C.F.R. § 1614.302; 5 C.F.R. §§ 1201.151-1201.157).

[76] 29 C.F.R. § 1614.302(a)(1).

[77] 29 C.F.R. § 1614.302(b).

exhaust his or her administrative remedies prior to filing a judicial complaint.[78]

> If the employee chooses to go the EEO route, he or she simply files a complaint with the EEO department of the employing agency. 29 C.F.R. §§ 1614.105(a)(1), 1614.106(a) and 1614.108. The EEO officer then conducts an investigation and comes to a conclusion. The employee can then file an appeal to the EEOC and thereafter proceed to federal court, without the obligation to present evidence to an ALJ in order to exhaust his or her administrative remedies. **See** 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401 and 1614.407. If the employee chooses to appeal to the MSPB, however, the employee will have a hearing at which he or she must raise his or her claims of discrimination and present evidence in support of those claims in order to exhaust the administrative remedy. **McAdams v. Reno**, 64 F.3d 1137, 1142-44 (8th Cir. 1995); **Williams v. Rice**, 983 F.2d 177,  180 (10th Cir. 1993); **Chaney v. Rubin**, 986 F.Supp. 516, 522  (N.D.Ill.1997).[79]

The abandonment of the administrative process prior to its final disposition will prevent the exhaustion of administrative remedies and preclude judicial review.  "To withdraw is to abandon one's claim, to fail to exhaust one's remedies."[80]

The exhaustion of administrative remedies in a timely fashion is a prerequisite to federal subject matter jurisdiction.[81]   Failure to exhaust administrative remedies deprives a district court of federal subject matter jurisdiction.[82]  "If the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not

---

[78] **Coffman**, 328 F.3d at 624.

[79] **Id.**

[80] **Vinieratos v. U.S., Dept. of Air Force Through Aldridge**, 939 F.2d 762, 771 (9th Cir. 1991).

[81] **Barnes v. Levitt**, 118 F.3d 404, 408 (5th Cir. 1997).

[82] **Tolbert v. United States**, 916 F.2d 245, 247 (5th Cir. 1990).

reach the merits either."[83]   Additionally, the scope of a complaint under Title VII is limited to the scope of the EEOC's investigation that can be "reasonably be expected to grow out of the charge of discrimination."[84]

### 2. Plaintiff failed to exhaust her administrative remedies relating to age discrimination and discriminatory termination.

In this case, plaintiff filed two complaints with the EEOC.  In her initial complaint, she alleged that Meschkat discriminated against her based on her race and retaliated against her for complaining to the EEOC about her treatment by her supervisor, Balabuch.  Plaintiff amended this complaint three times to include harassment and retaliation by her co-workers and a sexual harassment claim against Meschkat.  Plaintiff filed a second complaint against Gonzalez alleging sexual harassment.

None of the claims presented by plaintiff to the EEOC include a claim of discrimination based on her age, and none of the Acceptance Letters mention a claim of age discrimination. There is nothing in the record that shows that the EEOC investigated or had reason to investigate whether the VA discriminated against plaintiff based on her age.  Because plaintiff did not present an age discrimination claim to EEOC, and plaintiff did not provide evidence that the scope of the EEOC's investigation reasonably encompassed age discrimination, plaintiff has failed to show that she exhausted her administrative remedies concerning a claim of age discrimination.  Consequently, the Court lacks subject matter jurisdiction over plaintiff's claim of age discrimination, and summary judgment in defendant's favor on plaintiff's age discrimination

---

[83] **Barnes**, 118 F.3d at 408.

[84] **Thomas v. Texas Dept. of Criminal Justice**, 220 F.3d 389, 395 (5th Cir. 2000).

claim should be **GRANTED**.

Likewise, it appears from the record that plaintiff abandoned her claim that defendant discriminated against her when it terminated her employment.  As noted above, plaintiff filed EEO complaints on November 7, 2000, and October 27, 2001.  After the VA terminated her employment, she filed an appeal to the MSPB on January 17, 2002, alleging that the VA wrongfully terminated her employment on the basis of her national origin and gender, and in retaliation for her EEO claims against management.

There is nothing in the record demonstrating that plaintiff filed an EEO complaint or amended her existing EEO complaints to include a claim that the VA terminated her employment based on a discriminatory motive.  Subsequent to the MSPB's order delineating the scope of its jurisdiction to include only those claims of discrimination relating to plaintiff's termination, plaintiff formally withdrew her appeal to the MSPB.  In response to the withdrawal of the appeal, the MSPB dismissed the case.

In its Pre-Hearing Order, the EEOC recognized the MSPB's exercise of jurisdiction over plaintiff's discriminatory termination claim and instructed the parties to brief the issue of the EEOC's jurisdiction to consider the events surrounding plaintiff's allegations of discrimination, retaliation, and sexual harassment that resulted in the termination of her employment.[85] Defendant submitted a brief, but plaintiff did not.[86]   The EEOC determined that it did not have jurisdiction over plaintiff's discriminatory termination claim, and specifically limited the issues before it to whether plaintiff was harassed or subjected to a hostile work environment on the

---

[85] Docket Entry 31, Exh. 6, EEOC Order.

[86] **Id.**

basis of gender, or in retaliation for taking protected EEO activity by complaining of derogatory or offensive comments by co-workers and complaining that her supervisor, Meschkat's, hugged and kissed her without her consent, and if plaintiff was subjected to discrimination or retaliation, what was the appropriate remedy.[87]

The contention that plaintiff abandoned her claim of discriminatory termination is bolstered by the fact that plaintiff did not address the scope of the EEOC's review in her complaint.  In her complaint, plaintiff quoted verbatim the EEOC's statement of the issues before it as summarized above.[88]

Nowhere in her complaint did plaintiff suggest that the EEOC erred in limiting the scope of the hearing.  Furthermore, in her response to defendant's motion for summary judgment, plaintiff did not expressly address defendant's argument that she abandoned the discriminatory termination claim or that the EEOC erred in failing to consider her termination claim.

Because plaintiff abandoned her claims that defendant terminated her employment because of her national origin, gender, age, and filing prior EEO complaints prior to a ruling on the merits, plaintiff failed to exhaust her administrative remedies before the MSPB. Consequently, the Court lacks jurisdiction over plaintiff's claims of discriminatory and retaliatory discharge, and summary judgment in favor of defendant on these claims should be **GRANTED**.

**D. Has plaintiff demonstrated genuine issues of material fact for trial that defendant subjected plaintiff to a hostile work environment?**

---

[87] **Id.**

[88] Docket Entry 1, ¶ 7.

Defendant contends that plaintiff has failed to establish a *prima facie* case of actionable hostile work environment.  Defendant argues the actions of plaintiff's co-workers do not rise to the level of severity or pervasiveness required to alter the conditions of Plaintiff's employment and create an abusive environment.  Furthermore, defendant argues that the VA exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and plaintiff failed to take advantage of defendant's sexual harassment preventative and corrective opportunities.

### 1. *Prima Facie* requirements of hostile work environment claim.

To establish a claim for a hostile work environment, a plaintiff must show: (1) that he or she is a member of a protected class; (2) that he or she was the subject of unwelcome harassment; (3) that he or she was subjected to harassment because of his or her class membership; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.[89] When the hostile work environment action is based on the allegation that a supervisor engaged in harassing conduct, the plaintiff only needs to satisfy the first four elements of the test, then the employer may be subject to vicarious liability to the employee.[90]

A term, condition, or privilege of employment is affected when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[89] **Boykin v. Seven Seventeen HB San Antonio Corp.**, No. SA-02-CA-958-XR, 2004 WL 1854200, *2 (W.D.Tex. August 19, 2004) (hostile environment based on racial harassment); **Shepherd v. Comptroller of Public Accounts of State of Texas**, 168 F.3d 871, 873 (5th Cir. 1999) (hostile work environment based on sexual harassment).

[90] **Watts v. Kroger Co.**, 170 F.3d 505, 509 (5th Cir. 1999).

environment.'"[91]  The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively perceive the environment to be abusive.[92]  Courts look at the totality of the circumstances to determine whether a person has been subjected to a hostile work environment.[93]

> Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence.[94]

To survive a motion for summary judgment, the objectionable conduct must consist of more than rude or offensive comments, teasing, or isolated incidents.  The harassment must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace."[95]

## 2. Harassment by plaintiff's co-workers.

In this case, there is no dispute that plaintiff satisfies the first two elements of her *prima facie* case of hostile work environment.  However, plaintiff fails to satisfy the third and fourth elements of her *prima facie* case.  Plaintiff only identifies two comments made by Castanuela as

---

[91] **Harris v. Forklift Sys., Inc.**, 510 U.S. 17, 21 (1993) (quoting **Mentor Sav. Bank, FSB v. Vinton**, 477 U.S. 57, 65 and 67 (1986)).

[92] **Id.** at 21-22.

[93] **Id.** at 23.

[94] **Hockman v. Westward Commc'ns, LLC**, 407 F.3d 317, 325-26 (5th Cir. 2004) (internal citations omitted).

[95] **Shepherd**, 168 F.3d at 874 (quoting **Weller v. Citation Oil & Gas Corp.**, 84 F.3d 191, 194 (5th Cir. 1996)).

evidence of harassing conduct.  Even assuming, Castanuela's "sarcastic" comments, "Are there only guys working here?" and "We're so lucky," were directed at plaintiff, they do not rise to the level of a Title VII violation.  At most, they are rude and isolated comments and were not so severe and pervasive as to interfere with plaintiff's job performance or undermine her competence.  Furthermore, plaintiff offers no evidence that Castanuela, who is also of Mexican American national origin, was motivated in her actions or comments by plaintiff's sex or national origin.

Plaintiff's allegations against Peggy Lindo, an African American female, are unclear.  She does not identify any comment or any action by Lindo that plaintiff subjectively felt was harassing.  At her deposition, plaintiff testified that she had no problems with Ms. Lindo.[96]

Likewise, Gonzalez's acts of harassment do not rise to the level of a Title VII violation. Although plaintiff satisfies the first three elements of a *prima facie* case of sexual harassment, she fails to establish the fourth element.  Plaintiff alleged that Gonzalez looked at her in a perverted manner while making hissing sounds, he told plaintiff that she must be really good in bed, and he discussed episodes of the Howard Stern Show, commenting on Howard Stern's antics with naked women and suggesting that plaintiff watch the show.  Plaintiff also took offense at Gonzalez using a vulgarity when he accused her of breaking his radio.

The Fifth Circuit has held that allegations of similar and even more egregious conduct did not sufficiently present a hostile work environment so as to survive a motion for summary

---

[96] Docket Entry 31, Exh. 1 at 74, 171-172.

judgment.[97]  Furthermore, Gonzalez stopped his offensive conduct after plaintiff told him to stop

looking at her and saying those things to her.[98]

Based on the foregoing, plaintiff has failed to show that her co-workers' actions and

comments were so severe and pervasive as to destroy her opportunity to succeed in the

workplace.  Consequently, defendant's motion for summary judgment on plaintiff's claims of

hostile work environment based on the actions of her co-workers should be **GRANTED**.

### 3. Analytical framework for assessing sexual harassment by a supervisor.

The Fifth Circuit has set out an analytical framework to be followed by trial and appellate

courts for disposing of all supervisor sexual harassment cases under Title VII.[99]  The analysis

follows the road map laid out by the United States Supreme Court in the companion cases

**Burlington Industries, Inc. v. Ellerth**[100] and **Faragher v. City of Boca Raton**.[101]

At the first step, courts must determine whether the employee has suffered a "tangible

employment action."[102]  A tangible employment action involves an official act of the enterprise

such as "hiring, firing, failing to promote, reassignment with significantly different

---

[97] **See** **Hockman**, 407 F.3d at 328 (alleged harasser remarked to plaintiff about another employee's body, he slapped plaintiff on the behind with a newspaper, he grabbed and brushed against plaintiff's breasts and behind, he once held her cheeks and tried to kiss plaintiff, he asked plaintiff to come to his office early so that they could be alone, and he once stood in the door of the bathroom while she was washing her hands); **Shepherd**, 168 F.3d at 872 (alleged harasser remarked that plaintiff's elbows were the same color as her nipples, commented on the size of plaintiff's thighs while pretending to look under desk, and attempting to look down plaintiff's clothing).

[98] Docket Entry 31, Exh. 1 at 250-253.

[99] **Casiano v. AT&T Corp.**, 213 F.3d 278, 283 (5th Cir. 2000).

[100] 524 U.S. 742 (1998).

[101] 524 U.S. 775 (1998).

[102] **Casiano**, 213 F.3d at 283.

responsibilities, or a decision causing a significant change in benefits."[103]  If the employee has suffered a tangible employment action, the case is classified as a "*quid pro quo*" case; if not, the case is classified as a "hostile environment" case.[104]

In a "*quid pro quo*" case, the court must next determine whether the tangible employment action resulted from the employee's acceptance or rejection of the supervisor's alleged sexual harassment.  If the employee can show a nexus between the alleged harassment and the tangible employment action, the employer is held vicariously liable *per se,* and the act of the supervisor essentially becomes the act of the employer.  The employer cannot assert the only affirmative defense permitted in cases involving sexual harassment (which is discussed below) in a *quid pro quo* case.[105]

If the case is a hostile work environment case, the court must determine whether the alleged actions of the supervisor would constitute severe or pervasive sexual harassment.  If the actions do not, the employer is not vicariously liable for the actions of the supervisor.  If the actions constitute severe and pervasive sexual harassment, the employer will be held vicariously liable unless the employer can prove that "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."[106]  This is the employer's only affirmative defense, and is only applicable

---

[103] **Id.** at n.6 (quoting **Ellerth**, 524 U.S. at 761-62).

[104] **Id.** at 283.

[105] **Id.**

[106] **Id.** at 284.

when the alleged sexual harassment by the supervisor has not resulted in a tangible employment action.[107]

### 4. Allegations of sexual harassment by Meschkat.

In Count 4 of her complaint, plaintiff alleges that her supervisor Meschkat sexually harassed her by hugging and kissing her in her work areas without her permission or consent, and constantly telling her that he loved her.  She testified at her deposition that the harassment began in 1994 and continued until 1999, when she became involved with another man and told Meschkat that he must stop.  Plaintiff's summary judgment proof contains cards and letters from Meschkat bearing dates ranging from May 27, 1994 to Christmas 1999.  In her summary judgment affidavit, plaintiff alleges for the first time before this Court that Meschkat threatened her and forced her to have sexual relations with him.[108]

As noted above, the initial inquiry is whether plaintiff suffered a tangible employment action.  Based on the record, plaintiff has failed to show that she suffered a tangible employment action as a result of Meschkat's alleged harassment.[109]  During the period of the alleged harassment, plaintiff does not identify any adverse employment consequence that she suffered due to Meschkat's attentions.  To the contrary, she went to Meschkat for help when she received notice of her first proposed suspension of less than fourteen days.  Meschkat intervened on her behalf and proposed a three-day suspension that was ultimately approved.

Because plaintiff has not shown a nexus between the alleged harassment by Meschkat and

---

[107] **Id.**

[108] Docket Entry 34, Tab 1, Affidavit at ¶¶ 4, 7, 10.

[109] As explained above, plaintiff's claims of harassment relating to her termination of employment are not properly before the Court.

a tangible employment action, plaintiff's case against defendant is not a *quid pro quo* case, and should be considered a hostile work environment case.  Accordingly, the Court must determine whether the alleged actions of the supervisor would constitute severe or pervasive sexual harassment.

There is no dispute that plaintiff satisfies the first three elements of a hostile work environment case in the context of sexual harassment.  Taken in the light most favorable to plaintiff and accepting as true her allegations that Meschkat's actions of hugging, kissing, and professing his love were unwelcome and nonconsensual,[110] along with her allegations that Meschkat intimidated her, plaintiff has sufficiently established severe and pervasive sexual harassment to overcome a motion for summary judgment.  According to plaintiff, Meschkat's unwelcome touching and kissing occurred daily.  He would come to plaintiff's workstation, and hug and kiss her in view of other staff members.  When she went to his office on work related business, Meschkat would chase her around a table.  Plaintiff alleged that she was unable to properly perform her work because of Meschkat's unwelcome attentions.[111]  Plaintiff further alleged that Meschkat warned her never to cross him.[112]  Plaintiff's uncontradicted allegations raise a genuine issue of material of fact whether Meschkat sexually harassed plaintiff.

In response to plaintiff's claim of hostile work environment, defendant raises the affirmative defense recognized by the Supreme Court in **Faragher**.  Defendant claims that it

---

[110] The record does not entirely support plaintiff's allegations.  While Meschkat sent numerous cards and letters to plaintiff professing his love, plaintiff sent some cards in return to Meschkat stating that she loved him.  From the content of Meschkat's letters, it appears that the major obstacle to his unrequited love was the fact that he was already married and did not intend to divorce his spouse in favor of plaintiff.

[111] Docket Entry 31, Exh. 1 at 188-192.

[112] Docket Entry 34, Tab 1, Affidavit at ¶¶ 4, 7.

exercised reasonable care to prevent and correct any sexual harassment and that plaintiff unreasonably failed to take advantage of the opportunities to prevent or correct the harm.

There is no dispute that defendant had an anti-sexual harassment policy in place. The policy defined sexual harassment and gave examples of unacceptable behavior. Moreover, the policy directed employees who believed that they were victims of sexual harassment to contact the Office of Resolution Management and provided a toll-free number to call.[113] Plaintiff acknowledged receiving the policy statement. Furthermore, she admitted that as a union steward, she was familiar with the grievance process and had represented an individual concerning a sexual harassment claim.

Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by defendant. Plaintiff alleged that Meschkat began sexually harassing her in 1994. Plaintiff did not report Meschkat's sexual harassment until May 15, 2001. By that time, Meschkat had ceased to harass her. Moreover, plaintiff used the filing of the sexual harassment complaint as a bargaining chip in seeking Meschkat's help to mitigate her fourteen-day suspension. Plaintiff readily admitted that she told Meschkat that if he refused to help her should would file a sexual harassment complaint against him.

Upon receiving plaintiff's allegation of sexual harassment against Meschkat, defendant promptly investigated the matter. Defendant convened a BOI on May 29, 2001, to investigate plaintiff's allegations. However, plaintiff refused to cooperate with the investigation, stating that she had already answered the same questions for the Office of Resolution Management.[114]

---

[113] Docket Entry 31, Exh. 11.

[114] Docket Entry 31, Exh. 13.

Based on the foregoing, defendant has successfully established its affirmative defense to liability on plaintiff's claim of alleged sexual harassment by Meschkat.  Accordingly, defendant's motion for summary judgment on plaintiff's claim that it should be liable for Meschkat's sexual harassment of plaintiff should be **GRANTED**.

### E. Has plaintiff demonstrated genuine issues of material fact for trial that defendant retaliated against plaintiff for prior EEO activity?

Defendant argues that plaintiff has failed to establish a *prima facie* case of retaliation. Specifically, defendant contends that plaintiff has not offered any evidence to show that either Castanuela or Meschkat knew of plaintiff's EEO activities and therefore, they could not have retaliated against her on the basis of her EEO activities.  Defendant additionally argues that it legitimate, nondiscriminatory reasons for taking the adverse employment actions of which plaintiff complains.

To establish a *prima facie* case of retaliation in violation of Title VII, a plaintiff must show that: (1) he or she engaged in an activity that Title VII protects; (2) the employer carried out an adverse employment action; and (3) a causal nexus exists between his or her protected activity and defendant's adverse action.[115]  "The 'causal link' required in prong three of the *prima facie* case for retaliation is not as stringent as the 'but for' standard," and therefore, a plaintiff does not need to show that engaging in the protected activity was the only factor motivating the employer to take the adverse employment action.[116]

Here, plaintiff engaged in protected activity by filing her EEOC claims.  She complains that because she filed the claims, she was harassed by her co-workers, in particular, Castanuela.

---

[115] **Harvill v. Westward Comme'ns, L.L.C.**, 433 F.3d 428, 439 (5th Cir. 2005).

[116] **Evans v. City of Houston**, 246 F.3d 344, 354 (5th Cir. 2001) (citing **Long v. Eastfield College**, 88 F.3d 300, 305 n.4 (5th Cir.1996)).

She also complains that Meschkat retaliated by recommending the three-day suspension, and that she was retaliated against when she received the fourteen-day suspension.[117]

However, plaintiff has not offered any evidence that Meschkat or Castanuela knew that she had filed EEO claims at the time that they took the alleged retaliatory action.  Plaintiff admitted in her deposition that she had no proof that either Meschkat or Castanuela were aware of her EEO complaints.[118]  Consequently, plaintiff has not satisfied the nexus element of her *prima facie* case of retaliation.

As a final point, defendant has provided substantial summary judgment evidence that each of the adverse employment acts taken by defendant were based on legitimate, nondiscriminatory reasons.  Defendant suspended plaintiff for three days because of complaints that she persisted in being rude to patients and to co-workers even after she was given a nondisciplinary counseling.  Defendant suspended plaintiff for fourteen days for photographing patients and employees without their consent and for failing to carry out supervisory instructions. The record shows that defendant substantiated each of the complaints and allowed plaintiff an opportunity to respond to the charges before taking any disciplinary action.[119]

Based on the foregoing, plaintiff has failed to establish a *prima facie* case that defendant retaliated against her by subjecting her to an adverse employment action because she engaged in protected activity (filing EEO complaints).  Accordingly, defendant's motion for summary

---

[117] Plaintiff also claims that her termination was an act of retaliation for filing her EEO claims, but as explained above, the issue of her termination is not properly before the Court.

[118] Docket Entry 31, Exh. 1 at 149-150, 153, 167-169.

[119] Defendant notified plaintiff that her employment would be terminated because of an unauthorized absence, discourtesy toward a veteran patient, endangering the safety of a co-worker, threatening a co-worker, leaving her duty station without permission, and displaying disrespectful conduct.  The record contains evidence of defendant's investigation into these charges.

judgment on plaintiff's retaliation claims should be **GRANTED.**

## VII. Recommendation

Based on the foregoing, it is my recommendation that defendant's motion for summary judgment (Docket Entry 31) be **GRANTED**.

## VIII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[120]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[121]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved

---

[120] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[121] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the District Court.[122]

       **SIGNED** on September 15, 2006.


NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[122] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).